UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EDWARD DEDITCH, ) | Case No. 1:24-cv-1488 |
| ) | |
| Plaintiff, ) | Judge J. Philip Calabrese |
| ) | |
| v. ) | Magistrate Judge |
| ) | James E. Grimes, Jr. |
| UBER TECHNOLOGIES, INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**CERTIFICATION OF A QUESTION OF LAW**

Plaintiff Edward Deditch was involved in an accident on a highway with a driver who was using the mobile applications of Defendants Uber Technologies, Inc. or Lyft Inc. As a result of the accident, Plaintiff sustained personal injuries and filed suit against (1) Uber, (2) Lyft, and (3) Rasier, LLC and Portier, LLC, subsidiaries of Uber. Lyft moves to dismiss on the ground that the Ohio Product Liability Act abrogates Plaintiff's claims arising out of the use of an app while driving—a question of first impression under Ohio law that may be determinative of this action. No controlling precedent of the Ohio Supreme Court answers the certified question of State law. Indeed, the parties cited no Ohio cases addressing the issue, and the Court's independent research found none either. Therefore, pursuant to Section 9 of the Rules of Practice of the Supreme Court of Ohio, the U.S. District Court for the Northern District of Ohio certifies a question of State law to the Ohio Supreme Court.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations of the complaint, which the Court accepts as true and construes in the light most favorable to Plaintiff in the present procedural posture, in November 2019, Mr. Deditch was in a motor vehicle accident on an interstate highway. (ECF No. 1-1, ¶ 28, PageID #22.) The other driver, the tortfeasor, was switching between the mobile applications for Uber and Lyft so she could pick up passengers. (*Id.*, ¶¶ 29 & 39, PageID #22 & #23.) As traffic came to a halt, the tortfeasor rear-ended Mr. Deditch, causing personal injuries. (*Id.*, ¶¶ 30 & 59–74, PageID #22 & #26–27.)

Based on these facts, Plaintiff filed suit in State court (ECF No. 1-1), and Defendants removed (ECF No. 1). In his complaint, Plaintiff brings claims for negligence with malice (Count One), subrogation (Count Two), declaratory judgment (Count Three), and equitable relief (Count Five—the complaint omits a Count Four). (ECF No. 1-1, PageID #24-32.) Count Two relates to Plaintiff's health insurer, United Seating and Mobility, which the Court realigned as a party Plaintiff. (ECF No. 14.) In Counts Three and Five, Plaintiff sought relief from University Hospitals. Previously, the Court severed the claims against University Hospitals and dismissed the hospital without prejudice. (*Id.*)

At issue here is Count One, in which Plaintiff seeks compensatory and punitive damages from Defendants Lyft, Uber, Rasier, and Portier. Plaintiff claims that these Defendants owed a duty to ensure that their applications did not cause distracted driving on highways and public roads. (ECF No. 1-1, ¶ 52, PageID #25.) Lyft moved

2

to dismiss Count One, contending that the Ohio Product Liability Act abrogates Plaintiff's claim. (ECF Doc. #9-1, PageID #80.) At oral argument, counsel for Uber indicated that other defenses might be available after discovery. But Lyft's motion to dismiss raises the question whether, as a matter of Ohio law, Plaintiff may proceed with his claims at all.

## CIRCUMSTANCES GIVING RISE TO THE CERTIFIED QUESTION

By way of background, the text, structure, and history of the Ohio Product Liability Act help frame the parties' dispute over the motion to dismiss and the certified question.

### I. Text

Ohio law defines a "product liability claim" as any claim or cause of action "that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from" a defective design, a failure to warn, or a failure to conform to representations about the product. Ohio Rev. Code § 2307.71(A)(13).

But the Ohio Product Liability Act, appropriately enough, only covers "products." Under the statute, a "product" means "any object, substance, mixture, or raw material that constitutes tangible personal property." *Id.* § 2307.71(A)(12)(a). Under this definition, as relevant here, a product must also be "capable of delivery itself" and be "intended for sale or lease to persons for commercial or personal use." *Id.* 2307.71(A)(12)(a)(i) & (iii). On the face of the statute, this definition does *not* apply to a digital app, like Lyft's app at issue, which is not an "object, substance,

3

mixture, or raw material that constitutes tangible personal property." Indeed, in briefing and at oral argument, Lyft concedes that its app is not a product under this definition. (ECF No. 16-6, PageID #217 n.1; *see also* ECF No. #9-1, PageID #82 n.2.)

The Act "abrogate[s] all common law product liability claims or causes of action." Ohio Rev. Code 2307.71(B). In that sense, a claim for negligent design of an app should proceed under Section 2307.75. But the statute ties abrogation of common-law claims to the defined term "product liability claim," which depends on an allegation about a "product." Each available theory under the Act involves a "product." Ohio Rev. Code § 2307.71(A)(13)(a) (defective design "of that product"); *id.* § 2307.71(A)(13)(b) (failure to warn "associated with that product"); *id.* § 2307.71(A)(13)(c) (failure "of the product" to conform to a representation). Therefore, the text of the statute does not appear to abrogate a common-law negligence claim based on a design defect theory for something that is not a "product" within the meaning of the Act.

## II. History

But in *Carrel v. Allied Products Corp.*, 78 Ohio St. 3d 284, 677 N.E.2d 795, paragraph one of the syllabus (1995), the Ohio Supreme Court held that the common-law cause of action for negligent design survives enactment in 1988 of the Ohio Product Liability Act. In response, the General Assembly amended the Ohio Product Liability Act effective in 2005, among other things, to supersede the holding in *Carrel*. In an uncodified section of the Act, the General Assembly so stated in its finding and intent:

> The General Assembly declares its intent that the amendment made by this act to section 2307.71 of the Revised Code is intended to supersede the holding of the Ohio Supreme Court in *Carrel v. Allied Products Corp.* (1997), 78 Ohio St.3d 284, that the common law product liability cause of action of negligent design survives the enactment of the Ohio Product Liability Act, sections 2307.71 to 2307.80 of the Revised Code, and to abrogate all common law product liability causes of action.

2004 Am. Sub. S.B. 80, 125th Gen. Assemb., Section 3(D).

Against this historical background, the statutory language in Section 2307.71(B), enacted as part of the 2004 amendment, might sweep more broadly. "Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability claims or causes of action." Ohio Rev. Code § 2307.71(B). Although the statute references the defined term "product liability claim," it adds broader language abrogating product liability "causes of action" (an undefined term, though one included in the definition of a "product liability claim") too. Indeed, Ohio courts broadly hold that the Ohio Product Liability Act abrogates common-law claims. *See, e.g.*, *Michelson v. Volkswagen Aktiengesellschaft*, 2018-Ohio-1303, 99 N.E.3d 475, ¶¶ 25–29 (Ohio Ct. App.) (holding that the Act abrogates common-law claims sounding in product liability in a case alleging certain defects in the design and manufacture of a car); *Parker v. Ace Hardware*, 2018-Ohio-320, 104 N.E.3d 298, ¶¶ 27–31 (Ohio Ct. App.) (affirming summary judgment for the defendant on the ground that the Act abrogated common-law claims relating to use of allegedly defective camp fuel); *Rodgers v. Genesis Healthcare Sys.*, 2016-Ohio-721, ¶¶ 40–42 (Ohio Ct. App.) (affirming the dismissal of non-statutory claims against Purdue Pharma based on the side effects of certain prescription opioids). But none has addressed whether the Act abrogates common-law claims involving a digital or

5

intangible *res* (such as software, computer code, or a website) that otherwise sound in a theory of product liability.

Put another way, there is broad agreement that, however a plaintiff pleads his case, he cannot avoid or sidestep that Act by calling something a common-law claim that really attempts to proceed on a product liability theory. "The essential nature of the substantive allegations of the plaintiff's claim, not the artificial label attached to the claim, . . . determines the claim's true nature." *Volovetz v. Tremco Barrier Sols., Inc.*, 2016-Ohio-7707, 74 N.E.3d 743, ¶ 34. To date, however, the cases applying this principle involve "products" within the meaning of the Act.

### III. Structure

The Ohio Product Liability Act contains a provision that saves claims not subject to the Act. Ohio Rev. Code § 2307.72. But that saving statute does not clearly answer the certified question either. Working background through the statute, subsection (D) involves environmental claims that are not at issue. Subsection (C) expressly allows common law claims to proceed, but only those seeking "compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim." Ohio Rev. Code § 2307.72(C). "Economic loss" means pecuniary loss to property, but not "death, physical injury to person, serious emotional distress, or physical damage to property other than the product in question." *Id.* § 2307.71(A)(2) & (7). Finally, subsections (B) and (A) direct that any recovery of compensatory and punitive damages, "based on a product liability claim" for the former and "in connection with a product liability claim" for the latter, must be through the Act. *Id.* § 2307.72(A) & (B).

6

This statute leaves an injured plaintiff no common-law claim outside the Ohio Product Liability Act for a case alleging personal injuries in connection with a product. In a case like this, which does not involve a product within the meaning of the Act, the saving statute appears to foreclose a remedy too. It fails to address common-law claims alleging personal injuries based on a theory that the Act would cover (and abrogate) except that the claim arises from the use of something that is not a "product" within the meaning of the Act. Therefore, the broader structure of the Act fails to provide sufficient clarity to answer the certified question.

## CERTIFIED QUESTION

Does the Ohio Product Liability Act abrogate common-law claims alleging personal injuries from the use of a digital app, which is not a "product" within the meaning of the Act?

## ADDITIONAL CONSIDERATIONS

This certified question may be dispositive of this action. Normally, on an unsettled question of State law, a federal court will ""make an *Erie* guess to determine how [a state supreme court], if presented with the issue, would resolve it." *Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013). Where, as here, that issue is novel or unsettled, a federal court has the discretion to request that a State's highest court provide the definitive State-law answer through certification. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). The Court may do so on a party's motion, or *sua sponte*. *See American Booksellers Found. for Free*

7

*Expression v. Strickland*, 560 F.3d 443, 447 (6th Cir. 2009); *Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 408 (6th Cir. 2008).

Pursuant to Rule 9.01(A) of the Ohio Supreme Court Rules of Practice, certification is proper "if the certifying court, in a proceeding before it, issues a certification order finding there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court." Certification of a question rests within the sound discretion of this federal Court and is most beneficial where a case presents a novel question of State law for which the State courts provide no guidance. *Gascho v. Global Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 713 (S.D. Ohio 2013). "[C]ertification of novel or unsettled questions of state law for authoritative answers by a State's highest court . . . may save 'time, energy, and resources and hel[p] build a cooperative judicial federalism.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).

As noted, no Ohio court appears to have addressed this question. Nor has any Ohio court addressed it in the context of an analogous case involving software, computer code, or a website, for example. The Ohio Supreme Court's decision in *Stiner v. Amazon.com, Inc.*, 162 Ohio St. 3d 128, 2020-Ohio-4632, 164 N.E.3d 394, involved a different question—whether the creation of an online marketplace to match third-party sellers and buyers subjected a person to liability under the Act as a supplier. In that case, the product was a caffeine powder, not the marketplace itself or another digital application. Accordingly, the case does not answer the certified

8

question. The Ohio Supreme Court should have the first opportunity to answer this important question of State law that will affect other cases and the business climate in the State.

## ADDITIONAL INFORMATION

Pursuant to Rule 9.02, the Court supplies the following information.

Name of the Case:

*Deditch v. Uber Technologies, Inc., et al.*

Parties and Counsel:

| Edward Dedtich | James E. Boulas (70007)<br>Panagiota D. Boulas (103745)<br><br>*Law Office of James E. Boulas*<br>7912 Broadview Road<br>Broadview Heights, OH 44147<br>(440) 526-8822 |
|---|---|
| Lyft Inc. | Kristen Wedell (72500)<br><br>*Dickie, McCamey, & Chilcote*<br>2330 Fifth Third Center<br>600 East Superior Avenue<br>Cleveland, OH 44114<br>(216) 685-1827 |
| Uber Technologies<br><br>Raiser, LLC<br><br>Portier, LLC | Matthew A. Smartnick (96932)<br>Robert D. Boroff (91866)<br><br>*Gallagher Sharp*<br>1215 Superior Avenue, 7th Floor<br>Cleveland, OH 44114<br>(216) 522-1593 |

| United Seating and Mobility, LLC | Emmanuel Sanders (97539)<br>Jennifer Heis (76181)<br><br>*UB Greensfelder*<br>1660 West 2nd Street, Suite 1100<br>Cleveland, OH 44113<br>(216) 583-7228 |
|---|---|

Moving Party:

The Court designates Plaintiff as the moving party. At oral argument counsel for Plaintiff requested certification, making this designation appropriate.

### INSTRUCTIONS TO THE CLERK

In accordance with Rule 9.03(A) of the Ohio Supreme Court Rules of Practice, the Court directs the Clerk of the United States District Court for the Northern District of Ohio to serve copies of this Certification Order on counsel for the parties and to file this Certification Order under the seal of this Court with the Supreme Court of Ohio, along with appropriate proof of service.

**SO ORDERED.**

Dated: July 14, 2025

J. Philip Calabrese
United States District Judge
Northern District of Ohio

10